O

# United States District Court
# Central District of California

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>vs.<br><br>ROBERT DAVID FULLER,<br><br>Defendant. | Case № 5:19-CR-00178-ODW<br><br>**ORDER DENYING DEFENDANT'S MOTION PURSUANT TO 18 U.S.C. § 3582(c) FOR COMPASSIONATE RELEASE FROM CUSTODY [DE-45]** |

## I.   INTRODUCTION

Defendant was charged in a three-count indictment with (1) Possession with intent to Distribute Methamphetamine in violation of 21 U.S.C.§§ 841(a)(1), (b)(1)(A)(viii); (2) Possession of a firearm in furtherance of a drug trafficking offense, in violation of 21 U.S.C. § 924(c)(1)(A)(i) and; (3) Being a Felon in Possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1), (9).  (Indictment DE-14.)  He plead guilty on July 16, 2019 to Counts 1 & 3 [DE-25.]  On January 13, 2020 he was sentenced to 121 months on Count 1 and 120 months on Count 3 to run concurrently, plus 5 years of supervised release. (Judgment & Commitment Order

("J&C") [DE-38].) Nine (9) months later he seeks to have his 10-year sentence commuted to time served. [DE-45.]

Specifically, he files a motion for compassionate release, requesting that the unserved balance of his sentence be forgiven and he be released. A drastic remedy to be sure. A district court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); see *Dillon v. United States,* 560 U.S. 817, 824–25 (2010). Compassionate release is one of the few exceptions to this rule, allowing a court to "reduce the term of imprisonment (and . . . impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)[.]" 18 U.S.C. § 3582(c)(1).

## II.   APPLICABLE LAW

Because this relief is both drastic and permanent, it is subject to strict statutory conditions. First, a district court can evaluate a defendant's request for compassionate release only "after the defendant has fully exhausted all administrative rights" before the Bureau of Prisons ("BOP"). 18 U.S.C.§ 3582(c)(1)(A). This requirement is mandatory. *United States v. Alam,* 960 F. 3d 831, 832 (6th Cir. 2020); *United States v.Raia, 954* F. 3d 594, 597 (3d Cir. 2020. From the standpoint of the district court it is jurisdictional. See generally *Shaw v. Bank of America Corp.,* 946 F.3d 533, 541 (9th Cir. 2019) ("statutorily-provided exhaustion requirements deprive the court of jurisdiction"); *United States v. Weidenhamer*, No. CR 16-1072-1-PHXROS, 2019 WL 6050264, at *2 (D. Az. Nov. 8, 2019) (citing cases).

Fuller argues, however, that the exhaustion requirement should be waived because until recently, he had been housed at the West Valley Detention Center in San Bernardino, a non-Bureau of Prisons facility. While it is true that until recently, it would have been futile to seek administrative remedies under 18 U.S.C. § 3582(c)(1).

2

However, at the time of the filing of the instant motion, he had in fact been housed in a federal facility. The Declaration of Deputy Federal Public Defender Susel B. Carillo-Orellana indicates that Mr. Fuller has been designated to Butner Medium II facility with an interim stop at Victorville Medium II FCI. (Exh 1 of Mtn.). Regardless of the fact that as of the date the instant motion was filed, he was housed in a federal facility, the Court will consider the motion on its merits.

In evaluating compassionate-release requests, courts must follow both the statute and relevant, binding policy statements. See *id.*; 28 U.S.C. § 994(t); USSG § 1B1.13. Pursuant to those authorities, to be eligible for compassionate release, a defendant must demonstrate: (1) the existence of extraordinary and compelling reasons, within the meaning of the statute; and (2) that he is not a danger to the community. 18 U.S.C. § 3582(c)(1)(A). Specifically, the statute requires that any reduction be "consistent with applicable policy statements issued by the Sentencing Commission"--in this case, USSG § 1B1.13. *Id*. As the Supreme Court recognized in *Dillon*, 560 U.S. at 827, because § 3582(c) permits a sentence reduction only where it is "consistent with applicable policy statements issued by the Sentencing Commission," such policy statements are binding on a court determining eligibility. USSG § 1B1.13 explicitly defines the "extraordinary and compelling reasons" that make a defendant eligible for compassionate release. See 28 U.S.C. § 994(t). They include, as relevant here, (1) a "terminal illness"; (2) a serious medical condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"; or (3) a defendant who is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and "has served at least 10 years or 75 percent of his or her term of imprisonment, whichever

"

is less." USSG § 1B1.13 (other grounds omitted). USSG § 1B1.13, comment. (n.1(A)-(B). Neither the first nor third criteria seem to apply. Defendant bears the burden to prove that "extraordinary and compelling reasons" exist to support his motion. 18 U.S.C. § 3582(c)(1)(A); see *United States v. Greenhut*, No. 18-CR-48-CAS, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020) (defendant bears the burden of establishing entitlement to sentencing reduction); *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) ("defendant, as the § 3582(c)(2) movant, bears the burden of establishing" eligibility); see generally *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.") Third, even for defendants who are statutorily eligible, compassionate release is a "rare" and "extraordinary" remedy, within district courts' discretion to deny. *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020); *United States v. Mangarella*, No. 06-CR-151, 2020 WL 1291835, at *2–*3 (W.D.N.C. Mar. 16, 2020). Specifically, "it is a rare case in which health conditions present an 'exceptional reason'" to allow for release where detention would otherwise be warranted. See *United States v. Willis,* 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) ("most courts treat compassionate release 'due to medical conditions [a]s . . . a rare event."). This reluctance to expansively apply compassionate release is grounded in a concern that any less narrow application would yield significant sentencing disparities. *United States v. Ebbers,* --- F. Supp. 3d. ---, 2020 WL 91399, at *6 (S.D.N.Y. Jan. 8, 2020).

### III. DISCUSSION

Fuller reports having high blood pressure, obesity, a respiratory ailment since birth, depression and anxiety and chronic pain in his extremities. He argues that the CDC has identified some of these conditions as placing an individual at increased risk

of contracting COVID-19. (Mtn. at p. 10.) In point of fact, he has tested positive for the disease on May 31, 2020. (See Exhibit 3-3. Tested positive for SARS COV2, the virus which causes COVID-19.) Consequently, it appears he has contracted the disease and thankfully survived it. [1]

Even considering his non-life threatening medical conditions, and giving Fuller the benefit of the doubt on the issue of exhaustion, he is not eligible for forgiveness of the balance of his sentence for compassionate reasons because he also remains a danger to the community. Moreover, under the 18 U.S.C. § 3553(a) factors, the COVID-19 crisis does not justify a permanent, irrevocable reduction in his sentence.

### A. THE FACT THAT COVID-19 HAS INFECTED THE ENTIRE GLOBE IS NOT AN "EXTRAORDINARY AND COMPELLING" REASON WHICH WARRANTS RELEASE

Defendant has not demonstrated an eligibility for compassionate release. As the Third Circuit recently held, "[w]e do not mean to minimize the risks that COVID-19 poses in the federal prison system," but the "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison cannot independently justify compassionate release"--particularly given "BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *Raia*, 954 F.3d at 597. Here, notwithstanding defendant's health condition, his continuing danger to the community makes him ineligible for compassionate release.

#### 1. Defendant's Health Condition Does Not Qualify as "Serious."

---

[1] There is no firm evidence that the antibodies that develop in response to SARS-CoV-2 infection are protective. If these antibodies are protective, it's not known what antibody levels are needed to protect against reinfection. www.cdc.gov › coronavirus › 2019-ncov › hcp › faq

"

Defendant apparently has conditions which have been identified by the CDC as high-risk factors for COVID19. Per a June 25, 2020 Press Release from the CDC Newsroom, "There was consistent evidence (from multiple small studies or a strong association from a large study) that specific conditions increase a person's risk of severe COVID-19 illness:

- Chronic kidney disease
- COPD (chronic obstructive pulmonary disease)
- Obesity (BMI of 30 or higher)
- Immunocompromised state (weakened immune system) from solid organ transplant
- Serious heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies
- Sickle cell disease
- Type 2 diabetes

Indeed, he has already contracted and fought off the disease, which indeed, may make him less susceptible to contracting it again. In any event, his medical conditions do not meet the definition of a "serious medical condition" per USSG § 1B1.13, nor do they fit within the group of conditions listed by the CDCR as "conditions [that] increase a person's risk of severe COVID-19 illness." They do not "substantially diminish[es] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." His prison medical records reflect he indicated he "does his own ADLS" (Activities of Daily Living, such as eating, bathing, dressing, toileting, mobility and continence. (Exh. 2-3) "The First Step Act did not revise the substantive criteria for compassionate release"--criteria that is set forth in the Sentencing Commission's binding "policy statement," USSG 1B1.13. *Ebbers*, 2020 WL 91399, at \*4—\*5; 18 U.S.C. § 3582(c)(1)(A). As courts have recognized, Congress intended that the

"

"Sentencing Commission, not the judiciary, determine what constitutes an appropriate use of the 'compassionate release' provision." *United States v. Willingham*, No. CR113-010, 2019 WL 6733028, at *2 (S.D. Ga. Dec. 10, 2019) (noting split in authority). The Sentencing Commission's policy statement--USSG § 1B.1.13--is thus binding on this Court. See *Dillon*, 560 U.S. at 827; see, e.g., *United States v. Nasirun,* No. 8:99-CR-367, 2020 WL 686030, at *2 (M.D. Fla. Feb. 11, 2020). Thus, as noted above, a defendant seeking compassionate release must establish that his condition falls within one of the categories listed in the policy statement. Those categories include, as relevant here, (i) any terminal illness, and (ii) any "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13, comment. (n.1(A)). He does ont have a terminial illness nor a serious physical or medical condition that substantially diminishes his ability to provide self-care. Indeed, as noted above, he acknowledges he is able to attend to his own Activities of Daily Living, ("ADL") such as eating, bathing, dressing, toileting, mobility and continence. The general threat of COVID-19--which poses a threat to every non-immune person in the country--does not satisfy these conditions. "[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *Raia*, 954 F.3d at 597; see also *Eberhart*, 2020 WL 1450745 at *2 ("a reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by § 3582(c)(1)(A)."). To classify COVID-19 as an extraordinary and compelling reason, by itself, would be inconsistent with the text of the statute and the policy statement. Moreover, it would have detrimental

"

real-world effects: interfering with BOP's organized anti-COVID-19 efforts, resulting in the inequitable treatment of inmates, and undercutting the strict criteria BOP employs to determine inmates' eligibility for sentence reductions and home confinement. Section 3582(c)(1)(A) contemplates sentence reductions for specific individuals, not the widespread prophylactic release of inmates and the modification of lawfully imposed sentences to deal with a viral pandemic. Namely, he suffers from obesity, which is a chronic medical condition identified by the Centers for Disease Control as a high-risk factor for COVID-19 complication. See generally Centers for Disease Control, Coronavirus Disease 2019 (COVID-19)--People Who Are At Higher Risk, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extraprecautions/people-at-higher-risk.html (last accessed June 24, 2020). Apparently the CDC knows of what it speaks because he did in fact contract the disease. However, he recovered. All that being said, Defendant's medical condition(s) alone, however, are not enough to warrant his release from prison. His medical issues are being managed medically according to his medical records.

### 2. **Defendant's Poses a Continuing Danger to The Community Which Makes Him Ineligible For Compassionate Release**

Serious illness is not the only requirement for compassionate release eligibility; a defendant must also demonstrate that he is "not a danger to the safety of any other person or to the community." USSG § 1B1.13(2). Defendant cannot make that showing, and thus he is ineligible for a reduced sentence. Specifically, this Court may not reduce a defendant's sentence unless it finds that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." USSG § 1B1.13; see *United States v. Gotti*, No. 02-CR743, 2020 WL 497987, at *6 (S.D.N.Y. 2020) (release was inappropriate regardless of extraordinary

"

and compelling circumstances; defendant posed a continuing danger to the public); accord *United States v. Urso*, No. 03-CR-1382, 2019 WL 5423431, at *3 (E.D.N.Y. Oct. 23, 2019); *United States v. Applewhite,* No. 08-CR-60037, 2020 WL 137452, at *2 (D. Or. Jan. 13, 2020) (denying compassionate release for seriously ill 80-year-old inmate based on danger). The record here supports a similar finding. Defendant poses a very real danger to the community. Defendant was found in possession of over 70 grams of methamphetamine as well as an automatic pistol and ammunition, which, as a felon, he is forbidden to possess. He has already suffered three prior conviction for possession of methamphetamine, a highly toxic controlled substance. Methamphetamine and firearms present a significant danger to the safety of others. *United States v. Hir,* 517 F.3d 1081, 1088 (9th Cir. 2008) ("community," within the meaning of 18 U.S.C. § 3142, is not necessarily confined to local geography).

In his letter to the court, attached to his motion, is an expression of a desire to reform, to seek help with his addiction, pursue an education and to perhaps become a drug counselor himself. Given that he has had three prior convictions for possession of methamphetamine, his claims of having reformed ring a bit hollow. He does not explain why with this conviction he has seen the light, but not with the prior three. Clearly, trafficking in drugs and weapons presents a grave danger to the community. As for his concerns about again contracting COVID-19, all California residents are currently required to adhere to a modified shelter in place and "heed the current State public health directives" to avoid the spread of COVID19. California Executive Order N-33-20 (March 19, 2020), available at https://covid19.ca.gov/img/Executive-Order-N-33-20.pdf. Such rules, though enforceable by peace officers, rely largely on voluntary compliance. A person who ignores such rules could increase infection rates, leading to citizens' severe illness

"

and death. Defendant's history demonstrate he has not been inclined to follow the law, which is why he finds himself in criminal history category IV. (See PSR, DE-29.) History provides no assurance that he will carefully abide by the rules if released. His prior criminal history includes drug trafficking, possession of methamphetamine and a loaded firearm. He also suffered a prior firearm offense dating back to 1995 which might cause one to suspect that his inclination to engage in certain types of criminal behavior has not been corrected. Apprehension, prosecution and imprisonment have not been a sufficient deterrent because he was on probation when he committed the instant offense. This causes the court to conclude that he is a danger to the community. Lastly, the 3553(a) factors which the Court has already evaluated at the time he was sentenced, remain unchanged. At that time, the Court believed a sentence of 121 months was fair and appropriate considering those factors. One year is not appropriate.

## IV. CONCLUSION

Considering all of the foregoing, the Court concludes Defendant has not established the criteria warranting compassionate release, and as a result, his request is hereby **DENIED**.

IT IS SO ORDERED.

DATED: December 9, 2020

_____
OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE